UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

FEB 1 9 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 1:09-cr-00015-JDB |
| | ) |
| | ) Filed: |
| v. | ) |
| | ) Violation: 15 U.S.C. §1 (Sherman Act) |
| LAN CARGO S.A., and | ) |
| AEROLINHAS BRASILEIRAS S.A., | ) |
| | ) |
| Defendants. | ) |

## PLEA AGREEMENT

The United States of America and LAN Cargo S.A. (hereafter "LAN Cargo") and

Aerolinhas Brasileiras S.A. (hereafter "ABSA") (collectively "Defendants"), corporations

organized and existing under the laws of the Republic of Chile and the Federative Republic of

Brazil respectively, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C)

of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

### RIGHTS OF DEFENDANTS

1.    The Defendants understand their rights:

    (a)    to be represented by an attorney;

    (b)    to be charged by Indictment;

    (c)    as corporations organized and existing under the laws of the Republic of

Chile and the Federative Republic of Brazil, to decline to accept service of the Summons

in this case, and to contest the jurisdiction of the United States to prosecute this case

against it in the United States District Court for the District of Columbia;

      (d)     to plead not guilty to any criminal charge brought against them;

      (e)     to have a trial by jury, at which they would be presumed not guilty of the

charge and the United States would have to prove every essential element of the charged

offense beyond a reasonable doubt for them to be found guilty;

      (f)     to confront and cross-examine witnesses against them and to subpoena

witnesses in their defense at trial;

      (g)     to appeal their conviction if they are found guilty; and

      (h)     to appeal the imposition of a sentence against them.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.     The Defendants knowingly and voluntarily waive the rights set out in Paragraph

1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agree

voluntarily to consent to the jurisdiction of the United States to prosecute this case against them

in the United States District Court for the District of Columbia. The Defendants also agree to

waive any objection or defense they may have to the prosecution of the charged offense in the

United States District Court for the District of Columbia based on venue. The Defendants also

knowingly and voluntarily waive the right to file any appeal, any collateral attack, or any other

writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the

sentence imposed by the Court if that sentence is consistent with or below the recommended

sentence in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by

2

the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b) and (c). Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies they may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the Defendants will waive indictment and plead guilty at arraignment to a one-count Information to be filed in the United States District Court for the District of Columbia. The Information will charge the Defendants with participating in a combination and conspiracy to suppress and eliminate competition by fixing the cargo rates charged to customers for international air shipments, including to and from the United States, from in or about February 2003 until at least February 14, 2006, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.      The Defendants, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSES CHARGED

4.      Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts against Defendants:

(a)      For purposes of this Plea Agreement, the "relevant period" is that period from in or about February 2003 until at least February 14, 2006. During the relevant period, the Defendants were affiliated corporations. LAN Cargo is organized and existing under the laws of the Republic of Chile with its principal place of business in Miami, Florida. ABSA is organized and existing under the laws of the Federative Republic of Brazil with its principal place of business in Campinas, Sao Paulo, Brazil. During the

3

relevant period, LAN Cargo had a substantial ownership interest in ABSA and certain ABSA employees reported to high-level LAN Cargo employees. During the relevant period, the Defendants provided international air transportation services for cargo ("air cargo services") on routes to and from the United States and employed more than 200 individuals. For purposes of this Plea Agreement, "air cargo services" shall mean the shipment by air transportation for any portion of transit of any good, property, mail, product, container or item, such as heavy equipment, perishable commodities including flowers and produce, and consumer goods. For their air cargo services, the Defendants charged their customers a price that consisted of a base rate (including peak-season rates such as Valentine's Day and Mother's Day peak-season rates) and, at times during the relevant period, various surcharges, such as fuel surcharges (including post-Hurricane Katrina surcharges). The amount of the base rate charged by the Defendants could vary based on the type and weight of the shipment, the origin and/or destination of the shipment, and the nature of the goods or products being shipped. The base rate and surcharges charged by the Defendants to customers for air cargo services are collectively referred to herein as the "cargo rate." During the relevant period, Defendant LAN Cargo's sales of air cargo services from the United States totaled approximately $269 million and Defendant ABSA's sales of air cargo services from the United States totaled approximately $65 million. The total affected volume of commerce for both Defendants combined is approximately $334 million.

(b)    During the relevant period, the Defendants, through their officers and employees, including high-level personnel of the Defendants' cargo divisions,

4

participated in a conspiracy with one or more providers of air cargo services, a primary

purpose of which was to suppress and eliminate competition by fixing one or more

components of the cargo rates charged to customers for certain air cargo services.  In

furtherance of the conspiracy, the Defendants, through their officers and employees,

engaged in discussions and attended meetings with representatives of one or more

providers of air cargo services.  During these discussions and meetings, agreements were

reached to fix one or more components of the cargo rates to be charged to purchasers of

certain air cargo services.

      (c)     During the relevant period, certain air cargo shipments provided by one or

more of the conspirator carriers, and aircraft necessary to transport the air cargo

shipments, as well as payments for the air cargo shipments, traveled in interstate and

foreign commerce.  The business activities of the Defendants and their co-conspirators in

connection with the sale and provision of air cargo services affected by this conspiracy

were within the flow of, and substantially affected, interstate and foreign trade and

commerce.

## POSSIBLE MAXIMUM SENTENCE

5.     The Defendants understand that the statutory maximum penalty which may be

imposed against each of them upon conviction for a violation of Section One of the Sherman

Antitrust Act is a fine in an amount equal to the greatest of:

      (a)     $100 million (15 U.S.C. § 1);

      (b)     twice the gross pecuniary gain the conspirators derived from the crime (18

U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

6.      In addition, the Defendants understand that:

(a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose on each of them a term of probation of at least one year, but not more than five years;

(b)     pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order each of them to pay restitution to the victims of the offense; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the Defendants to each pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

7.      The Defendants understand that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence.  The Defendants understand that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard.  The Defendants understand that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).  Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the Defendants, their subsidiaries, and cooperating officers and employees have provided and will provide to the United States pursuant to this Plea

6

Agreement will not be used to increase the volume of affected commerce attributable to the

Defendants or in determining the Defendants' applicable Guidelines range, except to the extent

provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

8.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the Defendants

agree that the appropriate disposition of this case is, and agree to recommend jointly that the

Court impose, a sentence requiring the Defendants to pay to the United States a single criminal

fine of $109 million, pursuant to 18 U.S.C. § 3571(d), to be paid, pursuant to U.S.S.G.

§8C3.2(b), in installments with interest accruing under 18 U.S.C. § 3612(f)(1)-(2) as follows:

within fifteen (15) days of imposition of sentence -- $19 million; at the one-year anniversary of

imposition of sentence ("anniversary") -- $18 million; at the two-year anniversary -- $18 million;

at the three-year anniversary -- $18 million; at the four-year anniversary -- $18 million; and at the

five-year anniversary -- $18 million; provided, however, that the Defendants shall have the

option at any time before the five-year anniversary of prepaying the remaining balance then

owing on the fine ( "the recommended sentence").   Based on the revenue figures listed in

Paragraph 4(a), the United States and the Defendants agree that Defendant LAN Cargo's

attributable portion of the total fine is $88 million and Defendant ABSA's attributable portion of

the total fine is $21 million.  The parties agree that there exists no aggravating or mitigating

circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S.

Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant

to U.S.S.G. §5K2.0.  The parties agree not to seek or support any sentence outside of the

Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea

Agreement.  The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

**Guidelines Analysis**

   (a) Pursuant to U.S.S.G. §8C2.5, the Defendants' culpability score is 6.  This number is calculated by starting with 5 points, pursuant to U.S.S.G. §8C2.5(a); adding 3 points because the organization had more than 200 but less than 1,000 employees and an individual within high-level personnel of the organization participated in, condoned or was willfully ignorant of the offense, pursuant to U.S.S.G. §8C2.5(b)(3)(A)(i); and subtracting 2 points because the Defendants fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for their criminal conduct, pursuant to U.S.S.G. §8C2.5(g)(2).  Accordingly, the minimum multiplier to be applied to the base fine is 1.2 and the maximum multiplier is 2.4, pursuant to U.S.S.G. §8C2.6.

   (b) The base fine is 20% of the volume of commerce, pursuant to U.S.S.G. §2R1.1(d)(1) and §8C2.4(a) and (b).  The parties agree that the affected volume of commerce attributable to the Defendants for purposes of the Information is $334 million, adjusted to reflect information provided to the United States pursuant to U.S.S.G. §1B1.8.  The base fine for relevant air cargo shipments from the United States is $66.8 million (20% of $334 million).  Applying the multipliers of 1.2 and 2.4 to this amount, the fine range for the relevant air cargo shipments from the United States is between $80.2 million and $160.3 million.

(c)     The volume of affected commerce calculation in paragraph 8(b) above does not include commerce related to the Defendants' cargo shipments on routes into the United States.  The Defendants take the position that any agreements reached with competitors with respect to cargo shipments on routes into the United States should not be included in the Defendants' volume of affected commerce calculation pursuant to U.S.S.G. §2R1.1(d)(1).  The United States disputes the Defendants' position and contends that the Defendants' cargo shipments on routes into the United States during the charged conspiracy period violated the U.S. antitrust laws.  Moreover, the United States asserts that a Guidelines fine calculation that fails to account for cargo shipments into the United States affected by the conspiracy charged in the Information would understate the seriousness of, and the harm caused to U.S. victims by, the offense and would not provide just punishment.

(d)     The parties recognize the complexity of litigating the issues set forth in Paragraph 8(c) and the resulting burden on judicial and party resources, and agree that the appropriate resolution of this issue is to impose a fine in the lower half of the Guidelines sentencing range, notwithstanding the early cooperation and substantial assistance provided by the Defendants in this matter, in order to reflect commerce attributable to cargo shipments on routes into the United States.  The parties agree that the appropriate fine for the commerce affected by Defendants' participation in the charged conspiracy is $109 million payable as set forth in paragraph 8 above, with $88 million attributable to Defendant LAN Cargo and $21 million attributable to Defendant ABSA.

(e)    The Defendants understand that the Court will order them each to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(f)    Based on the Defendants' substantial assistance, all parties will recommend that no term of probation be imposed, but the Defendants understand that the Court's denial of this request will not void this Plea Agreement.

(g)    The United States and the Defendants jointly submit that this Plea Agreement, together with the record that will be created by the United States and the Defendants at the plea and sentencing hearings, and the further disclosure described in Paragraph 9, will provide sufficient information concerning the Defendants, the crime charged in this case, and the Defendants' role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553.  The United States and Defendants agree to request jointly that the Court accept the Defendants' guilty plea and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the Defendants and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. §6A1.1.  The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(h)    The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged offense is sufficient to justify the recommended sentence set forth in this paragraph, pursuant to 18 U.S.C. § 3571(d).  For purposes of this plea and sentencing only, the defendants waive their right to contest this calculation.

9.      Subject to the ongoing, full, and truthful cooperation of the Defendants described in Paragraph 12 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the Defendants' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the Defendants' involvement in the charged offense, and all other relevant conduct.

10.      The United States and the Defendants understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea Agreement.

(a)      If the Court does not accept the recommended sentence, the United States and the Defendants agree that this Plea Agreement, except for Paragraph 10(b) below, shall be rendered void.

(b)      If the Court does not accept the recommended sentence, the Defendants will be free to withdraw their guilty pleas (Fed. R. Crim. P. 11(c)(5) and (d)).  If the Defendants withdraw their pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty pleas or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the Defendants in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the Defendants agree that, if they withdraw their guilty pleas pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 14 of this Plea Agreement shall be tolled for the period between

11

the date of the signing of the Plea Agreement and the date the Defendants withdrew their guilty pleas or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

11.    In light of pending civil class action lawsuits filed against the Defendants, which potentially provide for a recovery of a multiple of actual damages, the United States agrees that it will not seek a restitution order for the offense charged in the Information.

## DEFENDANTS' COOPERATION

12.    The Defendants and their subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of air cargo services, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the Defendants and their subsidiaries shall include, but not be limited to:

(a)    producing to the United States all non-privileged documents, information, and other materials (with translations into English), wherever located, in the possession, custody, or control of the Defendants or any of their subsidiaries, requested by the United States in connection with any Federal Proceeding; and

(b)    using their best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the Defendants or any of their subsidiaries (including any current or former employee of LAN Cargo's parent corporation, or any of

its parent corporation's subsidiaries, whose primary responsibilities related to the sale of air cargo services for the Defendants) as may be requested by the United States – but excluding Armando Valdivieso, Roberto Bianchi, Alvaro Carril, Claudio Silva, and Tomas Silva – including making these persons available in the United States and at other mutually agreed-upon locations, at the Defendants' expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

13.    The ongoing, full, and truthful cooperation of each person described in Paragraph 12(b) above will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a)    producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents, and other materials, wherever located, requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b)    making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)    responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

13

(d)     otherwise voluntarily providing the United States with any non-privileged

material or information not requested in (a) - (c) of this paragraph that he or she may have

that is related to any Federal Proceeding;

(e)     when called upon to do so by the United States in connection with any

Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the

United States fully, truthfully, and under oath, subject to the penalties of perjury (18

U.S.C. § 1621), making false statements or declarations in grand jury or court

proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of

justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea

Agreement is rendered void under Paragraph 15(c), the statute of limitations period for

any Relevant Offense as defined in Paragraph 15(a) shall be tolled as to him or her for the

period between the date of the signing of this Plea Agreement and six (6) months after the

date that the United States gave notice of its intent to void its obligations to that person

under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

14.     Upon acceptance of the guilty plea called for by this Plea Agreement and the

imposition of the recommended sentence, and subject to the cooperation requirements of

Paragraph 12 of this Plea Agreement, the United States agrees that it will not bring further

criminal charges against the Defendants or any of their subsidiaries for any act or offense

committed before the date of this Plea Agreement that was undertaken in furtherance of an

antitrust conspiracy involving the sale of air cargo services. The nonprosecution terms of this

paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence. The Defendants understand that this Plea Agreement does not limit the ability of the United States to prosecute any company in which LAN Cargo had an ownership interest that ended prior to the date of this Agreement, for any involvement such company may have had in an antitrust conspiracy involving the sale of air transportation services or for any other offense.

15.    The United States agrees to the following:

(a)    Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the Defendants or their subsidiaries (or against any current or former employee of LAN Cargo's parent corporation, or any of its parent corporation's subsidiaries, whose primary responsibilities related to the sale of air cargo services for the Defendants), for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the Defendants or their subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the sale of air cargo services ("Relevant Offense"), except that the protections granted in this paragraph shall not apply to Armando Valdivieso, Roberto Bianchi, Alvaro Carril, Claudio Silva, and Tomas Silva;

(b)    Should the United States determine that any current or former director, officer, or employee of the Defendants or their subsidiaries may have information relevant to any Federal Proceeding, the United States may request that person's

cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the Defendants) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the Defendants;

(c)     If any person requested to provide cooperation under Paragraph 15(b) fails to comply with his or her obligations under Paragraph 13, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 15(e), information provided by a person described in Paragraph 15(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence; and

16

(g)    Documents provided under Paragraphs 12(a) and 13(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the Defendants or any of their subsidiaries.

16.    The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States.  This paragraph does not apply to an individual's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

17.    The Defendants understand that they may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the convictions resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take.  However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of the Defendants and their subsidiaries as a matter for that agency to consider before determining what administrative action, if any, to take.

17

## REPRESENTATION BY COUNSEL

18.    The Defendants have been represented by counsel and are fully satisfied that their

attorneys have provided competent legal representation.  The Defendants have thoroughly

reviewed this Plea Agreement and acknowledge that their counsel have advised them of the

nature of the charges, any possible defenses to the charges, and the nature and range of possible

sentences.

## VOLUNTARY PLEA

19.    The Defendants' decisions to enter into this Plea Agreement and to tender a plea

of guilty are freely and voluntarily made and are not the result of force, threats, assurances,

promises, or representations other than the representations contained in this Plea Agreement.

The United States has made no promises or representations to the Defendants as to whether the

Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

20.    The Defendants agree that, should the United States determine in good faith,

during the period that any Federal Proceeding is pending, that the Defendants or any of their

subsidiaries have failed to provide full and truthful cooperation, as described in Paragraph 12 of

this Plea Agreement, or have otherwise violated any provision of this Plea Agreement, the United

States will notify counsel for the Defendants in writing by personal or overnight delivery or

facsimile transmission and may also notify counsel by telephone of its intention to void any of

their obligations under this Plea Agreement (except its obligations under this paragraph), and the

Defendants and their subsidiaries shall be subject to prosecution for any federal crime of which

the United States has knowledge including, but not limited to, the substantive offenses relating to

18

the investigation resulting in this Plea Agreement. The Defendants and their subsidiaries agree that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the Defendants or their subsidiaries for any offense referred to in Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

21.    The Defendants understand and agree that in any further prosecution of them or their subsidiaries resulting from the release of the United States from its obligations under this Plea Agreement, because of the Defendants' or their subsidiaries' violation of the Plea Agreement, any documents, statements, information, testimony, or evidence provided by them, their subsidiaries, or current or former directors, officers, or employees of them or their subsidiaries to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against them or their subsidiaries in any such further prosecution. In addition, the Defendants unconditionally waive their right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

22.    This Plea Agreement constitutes the entire agreement between the United States and the Defendants concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the Defendants.

19

23.     The undersigned are authorized to enter this Plea Agreement on behalf of the Defendants as evidenced by the Resolutions of the Boards of Directors of the Defendants attached to, and incorporated by reference in, this Plea Agreement.

24.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

25.    A facsimile signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.


DATED: _January 21, 2009_

                                                       Respectfully submitted,


BY: _____          BY: _____
      LAN CARGO S.A.                          Mark R. Rosman, Assistant Chief
      By:    Cristian Ureta                   Mark C. Grundvig, Trial Attorney
      Its:    President and CEO                Brent Snyder, Trial Attorney
                                              Kathryn M. Hellings, Trial Attorney
                                              Elizabeth Aloi, Trial Attorney
                                              Carsten Reichel, Trial Attorney
BY: _____                    U.S. Department of Justice
      AEROLINHAS BRASILEIRAS S.A.              Antitrust Division
      By:    Luciano Ghelardi                  450 5th Street, N.W.
      Its:    General Counsel                   Suite 11300
                                              Washington, D.C. 20530

                                              Tel.: (202) 307-6694
                                              Fax: (202) 514-6525

BY: _____
      James V. Dick
      Marshall S. Sinick
      Squire Sanders
      1201 Pennsylvania Avenue, N.W.
      Washington, D.C. 20044
      (202) 626-6600

      Counsel for LAN CARGO S.A. and AEROLINHAS BRASILEIRAS S.A.

25.    A facsimile signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.


DATED: _____


Respectfully submitted,


BY: _____
LAN CARGO S.A.
By:    Cristian Ureta
Its:    President and CEO


BY: _____
AEROLINHAS BRASILEIRAS S.A.
By:    Luciano Ghelardi
Its:    General Counsel


BY: _____
James V. Dick
Marshall S. Sinick
Squire Sanders
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20044
(202) 626-6600


Counsel for LAN CARGO S.A. and AEROLINHAS BRASILEIRAS S.A.


BY: _____
Mark R. Rosman, Assistant Chief
Mark C. Grundvig, Trial Attorney
Brent Snyder, Trial Attorney
Kathryn M. Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
Carsten Reichel, Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street, N.W.
Suite 11300
Washington, D.C. 20530

Tel.: (202) 307-6694
Fax: (202) 514-6525

25.    A facsimile signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.


DATED: _~~February 21, 2007~~_____

                                                    Respectfully submitted,


BY: _____          BY: _~~Mark C Grundvig~~_____
       LAN CARGO S.A.                        Mark R. Rosman, Assistant Chief
       By:    Cristian Ureta                 Mark C. Grundvig, Trial Attorney
       Its:   President and CEO              Brent Snyder, Trial Attorney
                                             Kathryn M. Hellings, Trial Attorney
                                             Elizabeth Aloi, Trial Attorney
                                             Carsten Reichel, Trial Attorney
BY: _____          U.S. Department of Justice
       AEROLINHAS BRASILEIRAS S.A.  Antitrust Division
       By:    Luciano Ghelardi              450 5th Street, N.W.
       Its:   General Counsel                Suite 11300
                                             Washington, D.C. 20530


BY: _~~James V. Dick~~_____          Tel.: (202) 307-6694
       James V. Dick                         Fax: (202) 514-6525
       Marshall S. Sinick
       Squire Sanders
       1201 Pennsylvania Avenue, N.W.
       Washington, D.C. 20044
       (202) 626-6600


       Counsel for LAN CARGO S.A. and AEROLINHAS BRASILEIRAS S.A.


21



**LAN CARGO S.A.**

**CERTIFIED COPY OF RESOLUTION**

Resolved: That, as detailed in the minute of the meeting of the Board of Directors of Lan Cargo S.A. held on January 20, 2009 (the "Board Minute"):

1.  Entry into a Plea Agreement between the United States of America and Lan Cargo S.A. in substantially the form attached hereto;
2.  Mr. Cristian Ureta is authorised to execute the Plea Agreement on behalf of Lan Cargo S.A.; and
3.  Mr. Juan Carlos Mencio is authorised to appear in the U.S. District Court to represent Lan Cargo S.A. and to enter a guilty plea on behalf of Lan Cargo S.A.

**CERTIFICATION**

I, Cristian Toro, Secretary of the Board of Directors of Lan Cargo S.A., hereby certifies that:

1.  I am the Secretary of the Board of Directors of Lan Cargo S.A., a company duly incorporated in the Republic of Chile with its registered office situated at Avda. Presidente Riesco 5711, 11th Floor, Santiago, Chile; and
2.  The foregoing is a full, true and correct copy of a Resolution duly adopted by the Board of Directors of Lan Cargo S.A. at a Meeting held in accordance with the by-laws of Lan Cargo S.A. and that said Resolution has not been rescinded or revoked.

Signed at Santiago, Chile, this twentieth day of January, 2009, in the presence of:

_____
Cristian Toro
Secretary


_____
Signature of witness


Ignacio Bunster_____
Name of Witness



JUCESP PROTOCOLO
0.082.343/09-3

**ABSA - AEROLINHAS BRASILEIRAS S.A.,**
**CNPJ/MF N.º 00.074.635/0001-33**
**NIRE N.º 35.300.160.061**

### ATA DE ASSEMBLÉIA GERAL EXTRAODINÁRIA

Em campinas no dia 21 de Janeiro de 2009, às 10 horas, na sede social da companhia, situada no Aeroporto Internacional de Viracopos, Rodovia Santos Dumont Km 66, cumpridas as formalidades convocatórias, reuniram-se em Assembléia Geral Extraordinária sob a presidência de Norberto Maria Jochmann tendo como secretario Dr. Luciano de Almeida Ghelardi.

Aberta a sessão realizada a chamada e convocação, foi constatado pelo presidente a presença da totalidade do capital social subscrito e integralizado com e sem direito a voto, representada por seus sócios acionistas conforme assinaturas apostas no livro de presença de acionistas.

Foram submetidas à discussão e votação dos senhores acionistas e, por estes aprovados por unanimidade, as seguintes matérias

### 1. ACORDO COM O DEPARTAMENTO DE JUSTIÇA DOS ESTADOS UNIDOS DA AMERICA.

O Presidente informou aos demais que a matéria a ser discutida e aprovada na presente sessão refere-se a assinatura de um acordo por parte da ABSA – Aerolinhas Brasileiras S.A., denominado *"Plea Agreement"*, com o Departamento de Justiça dos Estados Unidos da América, relacionado com a investigação realizada pelo "DOJ", naquele país que alega que a Companhia em seus negócios de carga violou a lei de livre concorrência Shermann Act, estabelecendo praticas de fixação de preços de uma taxa atrelada ao carregamento de combustível (fuel surcharge) e outras cobranças.

O presidente procedeu à leitura de uma minuta do acordo e sem seguida explicou detalhadamente aos demais todos os seus antecedentes, esclarecendo todas as duvidas que foram suscitadas pelos presentes, inclusive as relacionadas a valores, forma e prazo para pagamento da multa estabelecida e mencionada no *"Plea Agreement"*.

Restou advertido aos presentes, que a melhor alternativa para os interesses da companhia é a celebração e assinatura do presente acordo denominado *"Plea Agreement."*

### 2. DELIBERAÇÕES DA ASSEMBLÉIA

Após um extenso debate, os presentes por unanimidade **ACORDARAM** o que segue:





(i)     Aprovar a firma por parte da companhia com o Departamento de Justiça dos Estados Unidos da América de um acordo denominado *"Plea Agreement"*, dentro dos termos nele previstos e amplamente expostos e debatidos nesta sessão;

(ii)    Facultar ao Dr. Luciano de Almeida Ghelardi, atuar na qualidade de Representante Legal da ABSA e a proceder à assinatura do presente acordo denominado *"Plea Agreement"*, bem como quaisquer outros documentos acessórios que possa ser exigido pelo Departamento de Justiça dos EUA.

(iii)   Facultar ao Dr. Luciano de Almeida Ghelardi para atuando individualmente comparecer em nome e representação de ABSA – Aerolinhas Brasileiras S.A., perante quaisquer Tribunais Federais dos Estados Unidos da América, em tantas audiências quanto forem necessárias, podendo firmar quaisquer espécie de documentos solicitados pela Autoridade Americana, ou pelo Departamento de Justiça, para a aprovação judicial do acordo denominado *"Plea Agreement"*.

A presente ata após lida, foi lavrada no livro próprio, aprovada e assinada por todos os presentes à esta Assembléia.

**Jochmann Participações Ltda**
Norberto Jochmann
Presidente

**Luciano de Almeida Ghelardi** – Secretário

**TADEF** – Trasnporte, Administração e Participação Ltda – **TALITO ENDLER** – Diretor

**LAN CARGO OVERSEAS**
Pablo Navarrete
Representante Legal

SECRETARIA DA FAZENDA
JUNTA COMERCIAL DO ESTADO DE SÃO PAULO

CERTIFICO O REGISTRO
SOB O NÚMERO ANA CRISTINA DE S F. CALANDA
SECRETÁRIA GERAL

41.235/09-5